# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| JORDAN SEIFFERT, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>QWEST CORPORATION D/B/A/ CENTURYLINK QC AND CENTURYLINK COMMUNICATIONS, LLC,<br><br>Defendants. | **CV-18-70-GF-BMM**<br><br>**ORDER** |

Plaintiff Jordan Seiffert, on behalf of himself, and all others similarly situated, brought a collective action against Defendant Quest Corporation d/b/a/ CenturyLink QC and Defendant CenturyLink Communications, LLC (collectively "CenturyLink" or "Defendants"). Defendants moved to dismiss the out-of-state Plaintiffs and putative Plaintiffs, or, in the alternative, transfer the case to the Western District of Louisiana where CenturyLink is headquartered. (Doc. 31.)

Defendants argued that the United States Supreme Court's ruling in *Bristol-Myers Squibb v. Superior Ct. of Cal.*, 137 S.Ct. 1773 (2017), applies to FLSA

1

collective actions and deprives the Court of specific personal jurisdiction. The Court determined that *Bristol-Myers* did not apply to FLSA collective actions and denied Defendants' motion on December 14, 2018. (Doc. 65.)

Defendants argue that the issue of whether *Bristol-Myers* deprives a district court of specific personal jurisdiction over the claims of out-of-state opt-in plaintiffs in a FLSA collective action presents a controlling question. (Doc. 71 at 2.) Defendants argue, therefore, that the Court's December 14, 2018, Order denying Defendant's Motion to Dismiss, or in the Alternative, Transfer Venue (Doc. 65) should be certified for interlocutory appeal.

## LEGAL STANDARDS

Appeal of a district court order generally may only occur after a final order ends the litigation. *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010). A court may certify a non-final order, however, if (1) the order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Couch,* 611 F.3d at 633. Interlocutory appeal should be granted sparingly and only in exceptional circumstances. *Google Inc. v. Rockstar Consortium U.S. LP*, 2014 WL 4145506 at *1 (N.D. Cal. Aug. 20, 2014) (*citing James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002)). The party seeking interlocutory review bears the

burden of showing that interlocutory review is warranted. *Couch*, 611 F.3d at 633.

The district court possesses discretion to determine whether interlocutory review is warranted. 28 U.S.C. § 1292(b); *see also Google Inc.*, 2014 WL 4145506, at *1 (*citing Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995)).

## DISCUSSION

Defendants argue that all three requirements for interlocutory appeal are met with regard to the Court's December 14, 2018, Order denying Defendant's Motion to Dismiss, or in the Alternative, Transfer Venue. (Doc. 65.) Defendants assert that the question of whether *Bristol-Myers* applies to collective actions presents ground for difference of opinion. (Doc. 71 at 5.) Defendants argue further that resolution of this issue could change materially the scope of this case. *Id.*

*Bristol-Myers* involved group of plaintiffs that brought a mass tort action against Bristol-Myers Squibb in California state court in which they alleged state law claims. *Id.* at 1779. The plaintiffs included 86 people who resided in California, and 592 people who resided in 33 other states. *Id.* The United States Supreme Court determined that the California state court lacked personal jurisdiction over the state claims brought by the out-of-state plaintiffs as no connection existed between the forum in California and the claims. *Id.* at 1782-83.

Plaintiffs premised the California state-based tort claims upon alleged injuries from a drug manufactured by Bristol-Meyers Squibb. *Id.* at 1281. The out-

of-state plaintiffs were not prescribed the drug in California, did not purchase the drug in California, did not ingest the drug in California, and did not suffer injuries in California. *Id.* The mere fact that out-of-state plaintiffs suffered the same injuries as the California resident plaintiffs did not extend the state court's exercise of specific personal jurisdiction to the out-of-state plaintiffs' claims. *Id.* The complaint lacked a connection between the forum and the specific claims at issue. *Id.* The Supreme Court noted, however, that its decision in *Bristol-Meyers* did not usurp "settled principles" of personal jurisdiction. *Id.* at 1283. The Supreme Court "[left] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784.

**I.     Does the Court's December 14, 2018, Order turn on a Controlling Question of Law?**

Defendants first argue that if *Bristol-Myers* applied to FLSA collective actions, Plaintiffs' claims would have been dismissed for lack of specific jurisdiction. (Doc. 71.) Defendants assert that the Court's December 14, 2018, Order turns on a determination of whether it possessed specific personal jurisdiction over the claims of out-of-state opt-in Plaintiffs. *Id.*

In its December 14, 2018, Order, the Court analyzed whether personal jurisdiction existed over CenturyLink with regard to the claims of the non-Montana Opt-in Plaintiffs. The Court first determined that Plaintiff Seiffert met all of the elements required for exercise of specific personal jurisdiction over CenturyLink.

4

The Court next analyzed whether *Bristol-Myers* would divest the Court of specific personal jurisdiction over the opt-in Plaintiffs. The Court determined that *Bristol-Myers* did not apply to FLSA collective actions. Defendants argue that a contrary result would be compelled if *Bristol-Myers* applied to FLSA collective actions and the out-of-state opt-in Plaintiffs' claims would be dismissed for lack of specific jurisdiction. (Doc. 71 at 8.) Defendants correctly argue that an opposite conclusion as to *Bristol-Myers* would compel a different analysis as to the out-of-state opt-in Plaintiffs. The question remains, however, whether a dispute over the Court's jurisdiction presents a "controlling" question of law.

A controlling question of law exists if resolution of the question would "materially affect the outcome of the litigation in district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). An order that determines who the parties to an action are may materially affect the outcome of the litigation. *Falco v. Nissan North America Inc.*, 108 F. Supp. 3d 889, 892 (C.D. Cal. 2015). *Falco* involved a similar motion certify the district court's order for interlocutory appeal. *Id.* at 891. The district court's order determined that the district court could exercised specific personal jurisdiction over a foreign corporation. *Id.* The district court evaluated the three-part test for determining whether interlocutory appeal of the order was appropriate. *Id.* at 892. The district court determined that the

question of specific personal jurisdiction over the defendant presented a "controlling issue of law." *Id.*

A determination of whether the Court has specific jurisdiction over the out-of-state opt-in Plaintiffs presents a similar controlling question of law. The Court's analysis of the out-of-state opt-in plaintiffs proves material because if this court's decision is correct, the court may exercise jurisdiction over hundreds of unnamed out-of-state opt-in plaintiffs. A contrary conclusion would result in a substantially smaller collective group of Plaintiffs. A smaller group of Plaintiffs would have the potential to materially change the outcome of the litigation. The size of the collective group dictates the demands on the litigation as a whole. This factor weighs in favor of CenturyLink.

## II. Is there Substantial Ground for Difference of Opinion Concerning a Controlling Question of Law?

Defendants next argue that *Bristol-Myers* presents a substantial ground for difference of opinion with regard to whether specific jurisdiction exists over out-of-state opt-in plaintiffs. (Doc. 71 at 8.) District courts are tasked with determining the extent to which controlling law is unclear under this element. *Couch*, 611 F.3d at 633. Difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point[.]" *Id.* Ground for difference of opinion may also exist if "novel and difficult questions of

first impression are presented." *Id.*; *see also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

Defendants argue that district courts are not in agreement with regard to *Bristol-Myers*'s application to FLSA collective actions. (Doc. 71 at 4.) Defendants argue that *Roy v. FedEx Ground Package System, Inc.*, 2018 WL 6179504 (D. Mass. Nov. 27, 2018), presents a difference of opinion. (Doc. 71 at 10.) *Roy* involved a group of FedEx employees who argued they were not paid overtime wages and brought an action against FedEx. *Roy*, 2018 WL 6179504, at *1. FedEx argued that *Bristol-Myers* prevented plaintiffs who lived and worked outside of Massachusetts from joining in the collective action. *Id.* The district court determined that *Bristol-Myers* applied to FLSA collective actions and dismissed the opt-in plaintiffs who did not live or work in Massachusetts. *Id.*

Defendants next argue that *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845 (N.D. Ohio Mar. 26, 2018), presents a similar difference of opinion. (Doc. 71 at 11.) *Maclin* involved a FLSA collective action brought against Reliable Reports of Texas ("Reliable"). *Maclin*, 314 F. Supp. 3d at 847. The plaintiffs alleged that Reliable failed to pay them for overtime worked. *Id.* Reliable moved to dismiss the FLSA claims of the non-Ohio plaintiffs. *Id.* at 848. Reliable argued that *Bristol-Myers* applied to FLSA collective actions and divested the district court of specific personal jurisdiction. *Id.* The plaintiffs argued that *Swamy v. Title Source,*

*Inc.,* 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017), demonstrated that *Bristol-Myers* did not extend to FLSA collective actions. The district court in *Maclin* determined that "district courts in the Ninth Circuit have no precedential effect on [the Sixth Circuit.]" *Maclin*, 314 F. Supp. 3d at 850. The district court accordingly agreed with Reliable that *Bristol-Myers* applied and the FLSA claims of non-Ohio plaintiffs should be dismissed. *Id.*

The Court agrees with the district court's conclusion in *Maclin* that district courts in other circuits do not impact this Court's reasoning. The court is, therefore, more persuaded by district courts in the Ninth Circuit than those in Massachusetts or Ohio. Unlike the district court in *Maclin* that declined to follow the reasoning in *Swamy* because it occurred in the Ninth Circuit, this Court is persuaded by the reasoning of *Swamy* for the very reason that it occurred there.

In the Court's December 14, 2018, Order, the Court examined the district court's analysis in *Swamy*. The named plaintiff in *Swamy* sought conditional certification of his FLSA collective action on behalf of all "staff appraisers" that he alleged similarly had been misclassified as exempt from overtime pay. *Swamy*, 2017 WL 5196780, at *1. The claim defined the class as "all staff appraisers that worked for defendant at any time from three years prior to the date the Court authorizes notice to the present." *Id.* the defendants opposed conditional certification of the class on the basis that the district court lacked jurisdiction over

8

non-California residents. *Id.* Defendants asked the district court to extend the reasoning of *Bristol-Myers* to the FLSA collective action. *Id.*

The district court recognized that "*Bristol-Myers* does not apply to divest courts of personal jurisdiction in FLSA collective actions." *Swamy*, 2017 WL 5196780, at *2. The district court determined that FLSA collective actions constitute "federal claims created by Congress specifically to address employment practices nationwide." *Id.* The district court further noted that "Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated'" *Id.*

Though there may be disagreement within other circuits with regard to whether *Bristol-Myers* applies to FLSA collective actions, district courts within the Ninth Circuit have consistently agreed that such application does not exist. *See Thomas v. Kellogg Co.*, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (determining that *Bristol-Myers* concerns only the "due process limits on the exercise of specific jurisdiction by a State.") *Id.* The fact that district courts outside of the Ninth Circuit have interpreted *Bristol-Myers* differently does not present a material difference of opinion warranting an interlocutory review.

*Bristol-Myers* does not establish a novel question. *Bristol-Myers* did not change the law. *Bristol-Myers* expressly determined that "settled principles regarding specific jurisdiction" remained in place. *Bristol-Myers*, 137 S.Ct. at

1783. The United States Supreme Court "[left] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. It is well settled that the original plaintiff in a collective action under the FLSA dictates a district court's analysis of specific jurisdiction. *AM Tr. v. UBS AG,* 78 F. Supp. 3d 977, 968 (N.D. Cal. 2015), aff'd, 681 Fed. App'x 587 (9th Cir. 2017); *see also Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015). *Bristol-Myers* involved personal jurisdiction in the context of state law claims. *Bristol-Myers*, 1327 S.Ct. at 1779. The United States Supreme Court's decision did not narrow the FLSA's principles that allow employees to bring claims on behalf of themselves and other employees "similarly situated." 29 U.S.C. § 216(b). A novel issue has not been presented as to the extent of the FLSA's application. This factor weighs in favor of Plaintiffs.

### III. Would Resolution of Whether *Bristol-Myers* Applies to Collective Actions Materially Advance the Litigation?

Defendants next argue that certification for interlocutory appeal is appropriate because it will materially advance the litigation. (Doc. 71 at 13.) Certification of an interlocutory appeal is appropriate when granting certification "would avoid protracted and expensive litigation." *In Re Cement*, 637 F.2d at 1026. Defendants assert that if their position prevailed on appeal, the number of plaintiffs would be substantially reduced. (Doc. 71 at 14.) Defendants argue,

therefore, that the Court and parties would be spared unnecessary cost of engaging in burdensome litigation. *Id.*

Defendants argue that *Molock v. Whole Foods*, 317 F. Supp. 3d 1 (D.D.C. 2018), proves similar to this case. *Molock* involved a Rule 23 class action brought by Whole Foods employees regarding the payment of bonuses. *Id.* at *3. The district court addressed a similar argument regarding whether *Bristol-Myers* applied to Rule 23 class actions. The district court rejected the defendant's argument that *Bristol-Myers* applied to out-of-state plaintiff's in Rule 23 class actions. *Id.* The district court, however, granted defendant's motion to certify the order for interlocutory review. *Id.* The Court determined that all three elements were met to allow for interlocutory review. *Id.* As to the third element, the court evaluated "whether reversal would hasten or at least simplify the litigation in some material way, such as significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *Id.* at *5. The court determined that the potential for avoiding burdensome discovery costs and conserving judicial resources in the event of a reversal could "materially advance the ultimate termination of the litigation." *Id.* (*citing* 28 U.S.C. § 1292(b)).

The same result is not compelled here. The outcome of an appeal of this case would not materially narrow the issues as Defendants argue. Plaintiffs have demonstrated that the putative opt-in Plaintiffs in this case will continue to seek

recovery as a collective group even if the case were moved to another district court. The dispute will, therefore, not be narrowed, discovery will remain the same, and the same issues will require resolution. The burden of litigation costs will instead be increased by forcing the parties to argue this issue on appeal – an issue that this Court has already determined to be immaterial within the Ninth Circuit. Judicial resources will not be conserved because a district court will continue to be required to resolve all of the issues presented currently in this Court, regardless of the outcome of an appeal. Interlocutory review does not advance any material benefit in this case. This factor weighs in favor of Plaintiffs.

## CONCLUSION

Having considered Defendants' Motion to Certify the Court's December 14, 2018, Order for interlocutory review (Doc. 70), the Court determines that exceptional circumstances do not exist to warrant such review. Defendants have demonstrated that the issue of whether *Bristol-Myers* applies to out-of-state opt-in Plaintiffs is a controlling issue of law in this case. Defendants have failed to show, however, that there is substantial ground for a difference of opinion on this controlling issue. Defendants have further failed to show that resolution of whether *Bristol-Myers* applies to out-of-state opt-in plaintiffs would materially advance this litigation. The 28 U.S.C. § 1292(b) three-factor test weighs in favor of Plaintiffs.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' Motion to Certify the Court's December 14, 2018, Order for Interlocutory Review (Doc. 70) is **DENIED.**

DATED this 22nd day of February, 2019.

Brian Morris
United States District Court Judge